JUDGE BRODERICK

AKERMAN LLP
David F. Bayne
Steven M. Cordero
666 Fifth Ave., 20th Fl.
New York, NY 10103
(212) 880-3800
(212) 880-8965 (fax)

*Attorneys for Plaintiffs*
*Reis, Inc. and Reis Services, LLC*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REIS, INC. and REIS SERVICES, LLC,

                    Plaintiffs,

- against -

THE NRP GROUP LLC,

                    Defendant.

15 Civ. _____ (___)

**COMPLAINT**

      Plaintiffs Reis, Inc. and Reis Services, LLC (together "Reis") as and for its complaint against Defendant The NRP Group LLC ("NRP Group"), by and through their attorneys Akerman LLP, allege upon knowledge as to themselves and their own actions, and otherwise upon information and belief, as follows:

      1.    This is an action for data piracy brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and for outright theft of Reis's property. The Defendant has been using a stolen login credential to access Reis's proprietary database without authorization and to download – without paying – hundreds of commercial analytic reports owned by Reis. These are reports that Reis's legitimate users pay substantial fees to obtain and which would have cost

{30821284;1}

Defendant in excess of $179,000 if Defendant had purchased, rather than stolen, them.

2. Reis's proprietary database (the "Reis Database") has been developed and maintained by Reis through its extraordinary investments, efforts, and creativity over the last 34 years. Reis, Inc. is a public company that is a leader in providing up-to-date commercial real estate market information and analysis. The Reis Database contains detailed information on commercial properties in 275 of the largest metropolitan markets and over 7,000 discrete neighborhoods throughout the United States.

3. Defendant's activities have only come to light in 2015 as a result of an investigation conducted by Reis's Compliance Group.

4. Defendant is a former Reis licensee which cancelled its subscription agreement with Reis in May 2014 prior to illegally downloading the hundreds of Reis reports that are at issue in this action.

5. Reis has discovered that after cancelling its subscription, Defendant obtained access to the Reis Database using a user name and password belonging to another Reis corporate subscriber.

6. Defendant knew that it was not permitted to use the login credentials of another Reis licensee to access the Reis Database. Nevertheless, Defendant wrongfully obtained and used a user name and password belonging to a legitimate Reis subscriber in order to access and/or download proprietary reports from the Reis Database for use in Defendant's business without paying Reis.

7. Thus, by using misappropriated login credentials, Defendant has stolen valuable data from Reis and this action seeks to hold Defendant accountable for that misconduct.

**Parties**

8.     Plaintiff Reis, Inc. is a Maryland corporation with its principal place of business in New York, New York.  Reis provides commercial real estate market information and analytical tools to real estate professionals through its subsidiary, plaintiff Reis Services, LLC.

9.     Plaintiff Reis Services, LLC is a Maryland limited liability company with its principal place of business in New York, New York.

10.    Reis is a commercial electronic information service provider and maintains its computer servers containing information and reports sold to users in New York State and elsewhere.

11.    Defendant NRP Group is a limited liability company organized under the laws of Ohio with its principal place of business located at 5309 Transportation Boulevard, Cleveland, OH 44125.

12.    Defendant also maintains an office in Buffalo, New York.

13.    Defendant NRP Group holds itself out as a developer, owner and manager of residential properties.  It's website claims the NRP Group has developed and constructed over 23,000 residential units in 13 states and manages more than 100 properties with 15,000 luxury, family and senior rental units in 7 states.  At least four of the properties NRP Group has developed, constructed and/or managed are located within New York State.

14.    Defendant derives substantial revenue from interstate commerce.

**Jurisdiction and Venue**

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1367.

16.    This court also has subject matter jurisdiction over this action pursuant to U.S.C.

§1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy in this action exceeds $75,000.

17. This Court has personal jurisdiction over the Defendant as a non-domiciliary of this State pursuant to CPLR §302(a)(1), (3) and (4) because it transacts business in New York State, has committed tortious acts without New York State causing injury within the State, and/or owns, uses or possesses real property situated within New York State.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  A substantial part of the alleged events giving rise to the claim occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## Factual Allegations

### Reis's Business and the Reis Database

19. Reis (including its predecessors) was founded in 1980 and is recognized by the real estate industry and the business and trade press as one of the premier sources of objective, timely, and granular market information.  This reputation was built by hard work and investment.  Significantly, Reis's work is particularly valued because of its objectivity: Reis is independent of property owners and developers and it does not compete as a broker in the listings space.

20. The Reis Database contains information on apartment, office, retail, warehouse/distribution, flex/research and development, self-storage and seniors housing properties, and is used by real estate investors, lenders, and other professionals to make informed buying, selling, and financing decisions.  In addition, Reis data is used by debt and equity investors to assess, quantify, and manage the risks of default and loss associated with individual mortgages, properties, portfolios, and real estate backed securities.  Reis's products are designed to meet the demand for timely and accurate information to support the decision-making of its

customers.

21. To maintain its position as a market leader, Reis continually invests in the databases, technologies, intellectual capital, and personnel (including over 200 employees) critical to supporting the ever-increasing information needs of commercial real estate professionals. Without access to the proprietary information developed and maintained by Reis, it would be incredibly burdensome, expensive, and time-consuming for a licensee (or other interested professional) to obtain equivalent in-depth information. Most professional real estate investors do not want to devote the resources to creating an in-house infrastructure capable of performing this work, which is why they subscribe to Reis's services.

22. Reis offers a variety of product delivery services that address the needs of different types of users. These services include *Reis SE*, its flagship delivery platform aimed at larger and mid-sized enterprises; *ReisReports*, aimed at other professional consumers and smaller enterprises; and *Mobiuss Portfolio CRE*, or *Mobiuss*, aimed primarily at risk managers and credit administrators at banks and non-bank lending institutions. It is through these products that Reis provides online access to the Reis Database.

23. In addition, Reis continues to develop and introduce new products, expand and add new markets and data, and find new ways to deliver existing information to meet client demand. The depth and breadth of Reis's data and expertise are critical in allowing Reis to grow its business. To maintain its position, Reis continuously expends substantial additional investments and efforts to maintain and improve its offerings and ensure their currency.

**Access to the Reis Database**

24. Reis offers users a choice between á la carte (pay-as-you-go) access to the Reis Database and subscription-based access. Both involve fee-based access pursuant to restrictive

license agreements incorporating the Reis Terms of Service.

25. To further protect its proprietary rights, the Reis Database is firewall and password protected.

26. Individual users may log on to the Reis website and purchase individual reports based on a retail pricing schedule found on the website.

27. Users with a regular need to access the Reis Database may purchase a subscription license agreement for which the subscriber obtains access to the Reis Database for a certain number of individual users within their company or partnership.  Each individual user at the subscriber is then issued his or her own login credentials consisting of a unique username and password to access the Reis Database pursuant to the customer's license.

28. Access to the Reis Database can be customized to accommodate the coverage, property type, and analytical needs of subscribers, providing access only to those portions of the database that the subscriber has paid to see.

29. Authorized users are not allowed to share passwords with other colleagues who work for a subscriber, much less with third-parties.  Nor may they use the Reis Database for the benefit of any party other than the subscriber.  Thus, for example, users may not take their credentials to new employers if they cease working for the subscriber and may not use the Reis Database for their own personal investments or other work unrelated to the work of the subscriber.

30. All users agree to abide by the Reis's Terms of Service, which is found on its website at https://www.reis.com/terms-of-service and is attached in substantially similar form to subscriber agreements, as a condition to accessing the Reis Database.

31. Among other things, the Terms of Service explicitly states that Reis licensees may

not "resell or transfer … use of or access to" the Reis Database and elsewhere states that "[t]ransfer or assignment of your password and user name to another individual is strictly prohibited." The Terms of Service is expressly governed by New York law.

32. All users of the Reis Database, whether subscribers or individual users, agree to be bound by the "terms, conditions, and notices contained" in the Terms of Service, and use of the Reis Database indicates acceptance of the Terms of Service. The terms require, among other things, payment of fees for use of the Reis Database and obligate users to refrain from acting "in such as manner" as to deprive Reis of a "loss of a potential sale or subscription."

33. Reis also maintains an Anti-Piracy Policy on its website at https://www.reis.com/anti-piracy-policy, which defines "piracy" as "using our service without a license to do so, enabling or trying to enable a third party who is not authorized to use our service to use our service, or exceeding the scope of the uses permitted you under a license agreement between you and Reis."

34. Links to Reis's Terms of Service and Anti-Piracy Policy are clearly labeled on the sign in page of the Reis Database under the heading "LEGAL," which is prominently displayed directly below the sign in fields. These links put users on notice that their access and use of the Reis Database are subject to the Terms of Service. The following is a screen shot of the login page:



**<u>Defendant's Theft of Reis's Property</u>**

35. In 2015, Reis's Compliance Group discovered that login credentials belonging to Reis subscriber Wells Fargo had been used by Defendant to access Reis's database and download numerous reports commencing on September 8, 2014 and continuing through at least February 28, 2015 from an Internet Protocol address ("IP address") assigned to Defendant (68.76.75.212) at Defendant's office located in Cleveland, OH.

36. In fact, on Saturday, February 28, 2015, the last day on which Defendant accessed Reis from the 68.76.75.212 IP address, Defendant downloaded 532 reports containing proprietary Reis data and analysis of various residential real estate markets around the country using the Wells Fargo user name and password.

37. The Reis information and reports downloaded by Defendant were taken for the benefit of Defendant, and, in fact, did indeed benefit Defendant because the information and reports pertained to properties and markets relating to Defendant's business and investments

{30821284;1}

8

and/or Defendant's prospective business or investments.

38. Defendant's unauthorized intrusions into the Reis Database were knowing and willful because Defendant knew that it was not a subscriber to Reis and knew that it was not paying for the information and reports being downloaded from Reis using another company's license.

39. Defendant knew that it had no right to use the Wells Fargo login credentials for its own business and that its access and use of the Reis Database was wrongful.

40. The final day on which Defendant accessed Reis using the Wells Fargo credentials was a Saturday, February 28, 2015, and on that day Defendant downloaded 532 reports for residential real estate markets all over the country.

41. The fact that Defendant engaged in this massive theft of Reis's reports on a single day over a weekend confirms that Defendant's wrongful conduct was knowing and intentional because Defendant was attempting to create its own library of Reis reports for future reference before its surreptitious usage was discovered and at a time when it hoped that Reis would not detect the usage.

42. None of this usage was known to Reis as it was occurring because Defendant was hiding behind a legitimate Reis user name and password issued to Wells Fargo pursuant to its Reis license.

43. Defendant's theft of Reis's property was intentional, wanton and malicious. Defendant logged on to Reis's Database on multiple occasions misrepresenting that it was a legitimate user and stole hundreds of reports.

44. In total, Defendant stole 618 reports from Reis using the Wells Fargo.

45. The value of the reports stolen by Defendant is at least $179,453.00.

46. Defendant's website claims that NRP Group has eight other offices around the United States besides its office in Cleveland where Reis has tracked Defendant's unauthorized and illegal use of Reis Services.

47. Discovery is required of Defendant and its computer systems to determine whether it has accessed Reis Services from other IP addresses about which Reis is yet unaware and stolen further reports and data from Reis.

48. Defendant has never paid for any of the reports that it has accessed and downloaded from Plaintiffs after the termination of its subscription agreement in May 2014.

49. Being a former licensee or Reis, Defendant was well aware of the provisions of Reis's Terms of Service.

50. Defendant, therefore, knew that using a Wells Fargo user name and password to gain access to Reis Services and obtain reports without paying for them was wrongful and without any claim of right.

51. Defendant's conduct shows a complete disregard of, and utter indifference to, the rights of Reis in its property and of intellectual property rights in general.

52. Reis has suffered damages as a result of Defendant's unauthorized access, downloading, and use of Reis's property from the Reis Database.

53. Reis is also entitled to an award of punitive damages for Defendant's egregious conduct and complete disregard for the rights of Reis over a lengthy period of time.

54. To the extent that Defendant accessed and used the Reis Database using credentials and IP addresses of which Reis is currently unaware, Reis reserves the right to seek damages against Defendant for any and all usage uncovered in discovery, or otherwise, while this action is pending.

## Count I
### (Violation of Computer Fraud and Abuse Act)

55. Reis repeats and realleges the allegations of Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. The Reis Database consists of servers and computers that are used in interstate commerce, and comprise a "protected computer" for purposes of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

57. Reis has maintained and secured the Reis Database by reasonable means at all relevant times.

58. Defendant intentionally accessed Reis's protected computer without authorization, or in excess of authorized access, and thereby obtained proprietary data and information services from the Reis Database.

59. Defendant knowingly and with intent to defraud, accessed Reis's protected computer without authorization, or in excess of authorized access, and by means of that conduct furthered the intended fraud and obtained proprietary data and information services from the Reis Database with a value of at least $179,453.00.

60. As a result of Defendant's conduct, Reis has suffered loss in attempting to protect its rights against unauthorized access, downloading, and use of data and information stored in the Reis Database and in expending time, money, and resources (aggregating at least $5,000 in 2015) to conduct an investigation into the intrusion and a damages assessment, and has suffered additional monetary damages in an amount to be determined at trial but at least $179,453.00 in lost revenue and, significantly more.

61. As a result of Defendant's conduct, Reis has also suffered damage to its business and goodwill.

{30821284;1}

62. Reis is, therefore, entitled to compensatory damages under the CFAA.

## Count II
### (Breach of Contract)

63. Reis repeats and realleges the allegations of Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. Use of the Reis Database is governed by and subject to the Terms of Service located on the Reis Database.

65. At all relevant times, Reis prominently displayed a link to the Terms of Service on the sign in page of the Reis Database.

66. In addition, as a former licensee of Reis, Defendant had actual knowledge of the contents of Reis's Terms of Service, a version of which was incorporated into Defendant's 2013-2014 subscription agreement with Reis.

67. By logging on to the Reis Database, all users agree to the bound by the Terms of Service, including Defendant.

68. The Terms of Service is a valid, enforceable contract through which Reis provides authorized users with a limited license to use the Reis Database. By entering into this contract, users agree to pay fees associated with use of the Reis Database.

69. At all relevant times, a schedule of prices for the reports downloaded by Defendant was available on the Reis website.

70. Defendant materially breached the Terms of Service by repeatedly accessing and downloading reports from the Reis Database without paying the associated fees for that which it was taking.

71. As a direct and proximate result of Defendant's material breach of the Terms of Service, Reis has been harmed and is entitled to monetary damages in an amount to be

{30821284;1}

determined at trial, but not less than $179,453.00, and, significantly more than that for reports which Reis suspects Defendant accessed and downloaded, exclusive of attorney's fees, costs, and interest.

## Count III
### (Conversion and Theft)

72. Reis repeats and realleges the allegations of Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. Defendant downloaded hundreds of reports from the Reis Database without paying for them.

74. In doing so, Defendant exercised unauthorized control and ownership over each downloaded report to the exclusion of Plaintiffs.

75. As a result, Plaintiffs suffered damage in the form of a lost sale for each report taken by the Defendant.

76. Defendant consumed those reports, used them, and could not return them to Plaintiffs.

77. The value of the reports taken by Defendant was over $179,453.00.

78. Reis has suffered and will continue to suffer injury and damage in an amount to be determined at trial, but not less than $179,453.00, as a direct and proximate result of Defendant's actions.

79. Reis is also entitled to punitive damages from Defendant in an amount to be determined at trial.

## Count IV
### (Misappropriation)

80. Reis repeats and realleges the allegations of Paragraphs 1 through 77 of this

Complaint as if fully set forth herein.

81.     Defendant downloaded hundreds of reports from the Reis Database without paying for them.

82.     Those reports were valuable, novel and original compilations of data used by Reis in its business.

83.     The reports were compiled at considerable expense to Reis and provided Reis with an advantage over its competitors.

84.     As set forth above, Reis did not allow access to the reports without payment or license and protected the reports contractually and technologically from unauthorized access.

85.     Defendant improperly accessed and used the reports for its benefit without authorization by Reis.

86.     As a result, Plaintiffs were damaged for each report misappropriated by the Defendant.

87.     The value of the reports taken by Defendant was over $179,453.00.

88.     Reis has suffered and will continue to suffer injury and damage in an amount to be determined at trial, but not less than $179,453.00.

89.     Reis is also entitled to punitive damages from Defendant in an amount to be determined at trial.

### Count V
### (Common Law Fraud)

90.     Reis repeats and realleges the allegations of Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     Each time Defendant logged on to the Reis Database using the Wells Fargo credentials, it represented to Plaintiffs that it was Wells Fargo and was logging on to the Reis

Database pursuant to the license held by Wells Fargo for that firm's sole and exclusive benefit. That representation was false each time it was made, and Defendant knew it was false.

92. Defendant did this on numerous occasions.

93. Defendant's misrepresentation of its identity to allow it access to the Reis Database was material. Plaintiffs reasonably relied Defendant's misrepresentation of its identity to allow it access to the Reis Database believing that Defendant was a legitimate Reis user subject to a valid license agreement with Reis.

94. As a result of Defendant's deception, it was able to download hundreds of reports from the Reis Database, with a value in excess of $179,453.00 without paying for them.

95. Reis was damaged by Defendant's fraud in an amount to be determined at trial, but not less than $179,453.00.

96. Reis is also entitled to punitive damages from Defendant in an amount to be determined at trial.

### Count VI
### (Unjust Enrichment)

97. Reis repeats and realleges the allegations of Paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98. Defendant has accessed, downloaded, and used not less than $179,453.00 worth of data and information from the Reis Database, but Defendant has provided no value in return to Reis.

99. Defendant's actions, initiating contact with Plaintiffs and accessing Plaintiffs' database under false pretenses using credentials issued to legitimate Reis subscribers to obtain reports for which Defendant did not intend to pay, were knowing, intentional, and willful.

100. It is against equity and good conscience to permit Defendant to retain the benefit

of the valuable information taken from Reis without providing payment therefor.

101. Defendant has been unjustly enriched at the expense of Reis in an amount to be determined at trial, but not less than $179,453.00.

102. Reis is also entitled to punitive damages from Defendant in an amount to be determined at trial.

## Count VII
### (Quantum Meruit)

103. Reis repeats and realleges the allegations of Paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104. Defendant has received, and continues to receive, a substantial economic benefit and competitive edge by virtue of its accessing, downloading, and using data and information from the Reis Database.

105. Defendant only obtained these benefits because it unlawfully accessed, downloaded, and used data and information from the Reis Database for its own economic and competitive advantage.

106. It is inequitable and unjust for Defendant to have obtained the benefit of using the Reis Database for its own economic and competitive advantage without justly compensating Reis.

107. Reis has suffered and will continue to suffer injury and damage in an amount to be determined at trial, but not less than $179,453.00, as a direct and proximate result of Defendant's actions.

108. Reis is also entitled to punitive damages from Defendant in an amount to be determined at trial.

## Relief Requested

WHEREFORE, Reis respectfully requests that the Court enter judgment in its favor and award the following relief against Defendant:

a.  awarding compensatory damages of the value of each and every report accessed, downloaded and/or used by Defendant from the Reis Database, plus interest and costs;

b.  awarding punitive damages in an amount to be determined at trial;

c.  awarding Reis its attorneys' fees and expenses; and

d.  awarding Reis such other and further relief as is just and proper under the circumstances.

Dated: New York, NY
April 28, 2015

AKERMAN LLP

By: _____
David F. Bayne
Steven M. Cordero
666 Fifth Ave., 20th Fl.
New York, NY 10103
(212) 880-3800
(212) 880-8965 (fax)
*Attorneys for Plaintiffs*
*Reis, Inc. and Reis Services, LLC*

{30821284;1}